**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

BODUM USA, INC. and PI-DESIGN AG,

        Plaintiffs,

   v.

STARBUCKS CORPORATION,

        Defendant.

DEFENDANT STARBUCKS
CORPORATION'S MOTION FOR
PROTECTIVE ORDER

Case No. 1:23-cv-02946

Hon. Andrea R. Wood

**DEFENDANT STARBUCKS CORPORATION'S
MOTION FOR PROTECTIVE ORDER**

Defendant Starbucks Corporation ("Starbucks") respectfully submits this Motion for Protective Order ("Motion") in response to Plaintiff Bodum USA, Inc.'s and Pi-Design AG's (collectively "Bodum") deposition subpoena to Howard Schultz.[1] Mr. Schultz, Starbucks former chief executive officer, was not involved in the major issues in dispute in this case. And the limited knowledge that Mr. Schultz does have is not unique, but instead is information Mr. Schultz became aware of through other Starbucks partners.[2] Thus, any information that Mr. Schultz is aware of can be garnered from other witnesses or other forms of discovery. Beyond Mr. Schultz's limited role in the matters in dispute and lack of unique knowledge, sitting for a deposition would impose a significant hardship on Mr. Schultz because he is actively involved with two organizations that he co-founded (the Schultz Family Foundation and the emes project LLC) and a variety of investment, mentoring, and speaking engagements. Starbucks respectfully requests that this Court enter a protective order quashing Bodum's subpoena to depose Mr. Schultz.

## FACTUAL BACKGROUND

Bodum seeks to depose Mr. Howard Schultz, former chief executive officer ("ceo") of Starbucks. Vander Stoep Decl., ¶¶ 3-5 & Ex. A. Mr. Schultz led Starbucks through four decades of change, building the company from 4 stores to more than 39,000 stores worldwide. Declaration of Howard Schultz in Support of Starbucks Motion for Protective Order ("Schultz Decl."), ¶ 2. Mr. Schultz served as Starbucks ceo during two separate periods before his retirement in 2018. *Id.* at ¶ 3. Between April 2022 and March 2023, Mr. Schultz returned to Starbucks to serve as interim ceo. *Id.* In March 2023, Mr. Schultz stepped down from his position as interim ceo, but remained

---

[1] Pursuant to Local Rule 37.2, counsel for Starbucks and Bodum met and conferred on July 26, 2024, regarding the need for Mr. Schultz's deposition and Starbucks plan to file a motion for protective order if Bodum proceeded with serving a subpoena for Mr. Schultz's deposition. Bodum stated that it will not forego its demand to depose Mr. Schultz and served the subpoena on August 19, 2024. Declaration of Kari Vander Stoep in Support of Starbucks Motion for Protective Order ("Vander Stoep Decl."), ¶¶ 3-5 & Ex. A.

[2] Starbucks refers to its employees as "partners" and uses lower case letters for the titles given to partners.

an active member of Starbucks Board of Directors. *Id.* at ¶ 13. Six months later, Mr. Schultz stepped down from his role on the Starbucks Board of Directors. *Id.* Mr. Schultz remains Chairman Emeritus of Starbucks. *Id.*

After stepping down from his position as interim ceo of Starbucks, Mr. Schultz has taken on significant roles at two organizations that he co-founded, the Schultz Family Foundation (the "Foundation") and the emes project LLC. *Id.* at ¶ 14. The Foundation focuses on helping young people successfully navigate the transition to adulthood, creating greater opportunity accessible to all. *Id.* Mr. Schultz is intimately involved in the continued development of the American Opportunity Index, a Foundation sponsored initiative, assessing how well America's largest companies are working to maximize their internal talent, as well as identifying and working with organizations that serve youth in Washington State and nationally. *Id.* Through the emes project, Mr. Schultz works to bring an entrepreneurial perspective to public-private partnerships, strategic advocacy, policy challenges, and political reform with the goal of enabling everyone to access the full promise of America. *Id.* In addition, Mr. Schultz is making investments in the entrepreneurial companies of tomorrow, offering mentoring and guidance through the lens of his experience building Starbucks. *Id.* Mr. Schultz routinely meets with, advises, and counsels the senior executives leading these companies and often travels to speak at company meetings and leadership conferences to share his personal wisdom and experience with employees. *Id.* Since leaving Starbucks in March of 2023, Mr. Schultz conducts a variation of these activities on a daily basis. *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(c) provides that a party may file a protective order to address matters relating to a deposition and that a court "may, for good cause, issue an order to

protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The apex doctrine, recognized in the Northern District of Illinois, seeks to "protect high-level executives from being deposed when any of [these] four circumstances exist: (1) the official has 'no unique personal knowledge of the matter in dispute'; (2) the information can be garnered from other witnesses or (3) other discovery methods; and (4) sitting for the deposition would impose a hardship in light of the officer's duties." *Little v. JB Pritzker for Governor*, No. 18 C 6954, 2020 WL 868528, at *1 (N.D. Ill. Feb. 21, 2020). If even just one of the four factors is present, that is sufficient to disallow an apex deposition. *Alipourian-Frascogna v. Etihad Airways, SPJC*, No. 21 C 0001, 2023 WL 5934897, at *6 (N.D. Ill. Sept. 12, 2023). The apex doctrine is applicable to both current and former high-level executives. *Vital Proteins LLC v. Ancient Brands LLC*, No. 1:22-cv-02265, 2023 WL 5671857, at *4 fn. 2 (N.D. Ill. Sept. 1, 2023) ("this Court and many others have held that the doctrine *is* applicable to former executives and officials") (emphasis in original) (citing *Lee v. City of Chicago*, No. 20 CV 1508, 2021 WL 2399999, at *3 (N.D. Ill. June 11, 2021)); *Fleury v. Union Pacific Railroad Company*, No. 20 C 380, 2024 WL 1791739, at *2 (N.D. Ill. Apr. 23, 2024) (collecting cases). Courts have not hesitated to block efforts to depose high ranking executives where the executives do not have unique personal knowledge of the facts underlying the events that led to the lawsuit in question. *Kove IO Inc. v. Amazon Web Services*, No. 18 C 8175, 2021 WL 12094206, at *5 (N.D. Ill. Oct 26, 2021) (citing *Murillo v. Kohl's Corp.,* No. 16-CV-196-JPS, 2016 WL 6090862, at *3 (E.D. Wis. Oct. 18, 2016)).

## ARGUMENT

### A.    Mr. Schultz possesses no unique information to this case.

The test for whether Mr. Schultz possesses unique information does not turn on whether

Mr. Schultz possesses *some* unique information about *some* fact, but whether Mr. Schultz has unique information about the matter in dispute. *Alipourian-Frascogna*, 2023 WL 5934897, at *8. This dispute centers on the interpretation of a settlement agreement reached by the parties in 2008 (the "2008 Settlement Agreement") and whether Starbucks sale of the Espro-branded French press (the "Espro Press") violated the terms of the 2008 Settlement Agreement. *See* Bodum's Amended Complaint, Dkt. 9 ("Compl."), ¶¶ 15, 19, 22–28. Mr. Schultz possesses no unique information regarding the 2008 Settlement Agreement or the Espro Press.

With respect to Mr. Schultz's knowledge of the Espro Press in dispute in this litigation, Mr. Schultz was not ceo at the time that Starbucks made the decision to source and sell the Espro Press. Schultz Decl., ¶¶ 3, 9. Starbucks started selling the Espro Press in March 2022, and therefore the decision to source and begin selling the Espro Press occurred during a time when Mr. Schultz was retired and not ceo of Starbucks. Starbucks Answer, Affirmative Defenses, and Counterclaim, Dkt. No. 19 ("Starbucks Counterclaim"), at ¶ 31; Schultz Decl., ¶¶ 3, 9. Mr. Schultz returned to Starbucks as interim ceo on April 4, 2022. *Id.* at ¶ 3. Mr. Schultz reports that he has no knowledge of the Espro Press. *Id.* at ¶ 9. Mr. Schultz was not involved in the decision to purchase the Espro Press, nor does he know who was involved in this decision. *Id.*

Moreover, during the times that Mr. Schultz served as ceo of Starbucks, Mr. Schultz was not involved in the day-to-day decisions regarding merchandise sourcing or sales. *Id.* at ¶¶ 7, 8. Instead, this role was tasked to other Starbucks partners. *Id.* at ¶ 7. Because Mr. Schultz delegated tasks regarding merchandise sourcing and sales to other Starbucks partners, Mr. Schultz lacks the information necessary to answer specific questions about Starbucks decisions to sell merchandise, and in particular, the Espro Press. *Id.* at ¶¶ 8, 9.

With respect to Mr. Schultz's knowledge of the 2008 Settlement Agreement, Mr. Schultz

began his second term as ceo of Starbucks in January 2008. *Id.* at ¶¶ 3, 4. At that time, Mr. Schultz was made aware of a lawsuit filed by Bodum against Starbucks in 2007. *Id.* at ¶ 4. Mr. Schultz asked Harry Roberts, his new senior vice president and chief creative officer, to resolve the pending litigation with Bodum. *Id.* at ¶ 5. Beyond telling Mr. Roberts to work with Joergen Bodum and Starbucks legal department to resolve the dispute, Mr. Schultz has no recollection of providing Mr. Roberts any direction on how the dispute should be resolved. *Id.* In mid-January 2008, just two weeks into Mr. Schultz's second tenure as ceo, Starbucks and Bodum executed the 2008 Settlement Agreement. Vander Stoep Decl., ¶ 6; Schultz Decl., ¶ 6. Mr. Schultz was not a participant in the settlement negotiations or strategy, nor execution of the 2008 settlement agreement. Schultz Decl., ¶ 6; *see Lee*, 2021 WL 2399999, at \*4 (simply being made aware of plaintiff's allegations is insufficient to warrant a deposition). To the best of Mr. Schultz's knowledge, he has never read the 2008 Settlement Agreement. Schultz Decl., ¶ 6.

To the extent Bodum argues Mr. Schultz's testimony may be relevant to show the parties' implementation of the terms contained in the 2008 Settlement Agreement, Mr. Schultz similarly lacks such knowledge. Mr. Schultz has been friends with Jorgen Bodum, the CEO of the Bodum Group, for nearly forty years. *Id.* at ¶ 4. Because of this personal relationship, Mr. Schultz has participated in meetings on behalf of Starbucks to foster a business relationship with Bodum. For instance, in June and August 2022, while serving as interim ceo for Starbucks, Mr. Schultz participated in meetings with Mr. Bodum and his son, Peter Bodum, along with several Starbucks merchandise sourcing vice presidents and partners. *Id.* at ¶ 10. Mr. Schultz does not recall discussing the 2008 Settlement Agreement, nor the Espro Press during these meetings. *Id.* at ¶ 11. The relevant inquiry is whether Mr. Schultz possesses unique information regarding the dispute. Here, he simply does not. Because Mr. Schultz lacks personal knowledge regarding the 2008

Settlement Agreement and the sale of the Espro Press, this Court should grant Starbucks Motion on this basis alone. *See Kove IO Inc.*, 2021 WL 12094206 at *8 (denying deposition of Apex Witness until "Plaintiff is able to demonstrate that it has been unable to obtain information on specific topics that bear on the elements of the claims or alleged damages, and that [the Apex Witness] has unique knowledge of this information").

### B. Any information that Mr. Schultz is aware of can be garnered from other witnesses or through other forms of discovery.

The Court has broad discretion to limit the scope of discovery when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). In Mr. Schultz's case, any information that Mr. Schultz is aware of can be garnered from other Starbucks witnesses or through alternate forms of discovery. This is true for both the 2008 Settlement Agreement negotiations and sales of the Espro Press. Indeed, "Plaintiffs should first attempt to obtain the information they seek by deposing other lower-level executives and employees with more knowledge of the relevant events . . . before deposing [the Apex Witness]." *City of Rockford v. Mallinckrodt ARD, Inc.*, No. 17 CV 50107, No. 20 CV 50056, 2020 WL 1675593, at *4 (N.D. Ill. Apr. 6, 2020).

As detailed in Starbucks Initial Disclosures, Starbucks former senior vice president and chief creative officer (Harry Roberts) and former vice president, assistant general counsel (Kathleen Albrecht) have direct knowledge of the facts regarding the 2008 Settlement Agreement. Vander Stoep Decl., ¶ 9, Ex. D. Mr. Roberts signed the 2008 Settlement Agreement on Starbucks behalf, communicated with Mr. Bodum regarding the resolution of the 2007 litigation, and was deputized by Mr. Schultz to resolve the dispute on Starbucks behalf. *Id.* at ¶¶ 6-8, Exs. B, C; Schultz Decl., ¶¶ 4-6. Ms. Albrecht coordinated the drafting of the 2008 Settlement Agreement with Bodum's counsel David Bennett. Vander Stoep Decl., ¶ 8 & Ex. C. Mr. Roberts is scheduled

to be deposed by Bodum on October 11, 2024. *Id.* at ¶ 11. Bodum has not requested the deposition

of Ms. Albrecht or served a subpoena. *Id.* at ¶ 13.

Similarly, Starbucks disclosed several partners in its Initial Disclosures that possess

knowledge related to Starbucks sourcing and sale of the Espro Press. *Id.* at ¶ 9 & Ex. D. To date,

Bodum has not deposed nor requested to depose those individuals. *Id.* at ¶ 14.

Bodum may argue that Mr. Schultz has unique knowledge of this dispute based on

negotiations that occurred between Bodum and Starbucks in 2022 and 2023 when Mr. Schultz

returned to Starbucks as interim ceo. In June 2022, and again in August 2022, while serving as

interim ceo for Starbucks, Mr. Schultz participated in meetings with Joergen Bodum and his son,

Peter Bodum, along with several Starbucks merchandise sourcing vice presidents and partners.

Schultz Decl., ¶ 10. Kelly Bengston, then senior vice president, chief procurement officer, for

Starbucks, attended these meetings. *Id.*; Vander Stoep Decl., ¶ 10 & Ex. E. The goal of these

meetings was to restart Starbucks relationship with Bodum, which had been terminated in 2020

before Mr. Schultz returned as Starbucks interim ceo. Schultz Decl., ¶ 10. During the June and

August 2022 meetings with Joergen and Peter Bodum, Mr. Schultz does not recall discussing the

2008 settlement agreement, nor the Espro Press. *Id.* at ¶ 11. When Mr. Schultz was interim ceo

from April of 2022 to March of 2023, he urged Mr. Bodum and Starbucks sourcing vice presidents

and partners to restart the partnership between Bodum and Starbucks. *Id.* at ¶ 12; Vander Stoep

Decl., ¶ 10 & Ex. E. Mr. Schultz was informed by Joergen Bodum and Kelly Bengston that an

obstacle to a partnership between the parties was a dispute over the 2008 settlement agreement

(*id.*; Schultz Decl., ¶ 12), however, he did not investigate the nature of that dispute nor direct how

that dispute should be resolved. *Id.* Instead, as was his practice as ceo, Mr. Schultz deputized his

executive and senior leadership teams to work with Joergen Bodum to determine whether a

solution could be achieved. *Id.*; Vander Stoep Decl., ¶ 10 & Ex. E.

Bodum cannot show that the information it seeks from Mr. Schultz cannot be obtained by less intrusive means. *See Little*, 2020 WL 868528, at *2 (precluding apex deposition where other witnesses have more detailed information about the allegations that plaintiffs make in their complaint). As noted earlier, Starbucks disclosed several partners with direct knowledge of the 2008 Settlement Agreement, the sourcing and sale of the Espro press, and the discussions between Starbucks and Bodum in 2022 and 2023 regarding their business relationship. Vander Stoep Decl., at ¶¶ 9-14 & Exs. B-E. Bodum already plans to depose some of these individuals, including Mr. Roberts and Ms. Bengston, and has chosen not to depose others. *Id.* at ¶¶ 11-14

There is no reason to depose former ceo Howard Schultz.

### C. The deposition of Mr. Schultz will impose significant hardship in light of Mr. Schultz's other duties.

The deposition of Mr. Schultz will only result in undue hardship to him. Even though Mr. Schultz is no longer the ceo of Starbucks, his duties remain significant. Mr. Schultz's responsibilities include an active role in the Schultz Family Foundation and the emes project LLC. Schultz Decl., ¶ 14. Moreover, Mr. Schultz is involved with a variety of investment, mentoring, and speaking engagements. *Id.* Since leaving Starbucks in March of 2023, he conducts a variation of these activities on a daily basis. *Id.*; *see City of Rockford* , 2020 WL 1675593, at *4 (quoting *Robertson v. McNeil-PPC Inc.*, No. LACV1109050JAKSSX, 2014 WL 12576817, at *17 (C.D. Cal. Jan. 13, 2014)) (holding apex doctrine applies where witness "was an executive at the highest level of the corporation," and "currently maintains other significant, corporate responsibilities"). Due to Mr. Schultz's current duties, sitting for a deposition in this matter would impose a significant burden on him. Schultz Decl., ¶ 14.

**CONCLUSION**

The Court can grant Starbucks Motion if only one of the four apex factors is present. Here, all of the apex factors weigh in favor of quashing Mr. Schultz's deposition. Because Mr. Schultz has no unique information, any information that Mr. Schultz is aware of can be garnered from other Starbucks witnesses or through alternate forms of discovery, and a deposition of the former Starbucks ceo will only result in undue burden, this Court should grant Starbucks Motion for Protective Order.


DATED:  August 23, 2024                          Respectfully submitted,


                                        */s/ Kari L. Vander Stoep*

                                        **K&L Gates LLP**

                                        Brian J. Smith
                                        ARDC No. 6321543
                                        K&L GATES LLP
                                        70 West Madison Street
                                        Suite 3300
                                        Chicago, Illinois 60602
                                        Phone: 312.807.4448
                                        Brian.J.Smith@klgates.com

                                        Pallavi Mehta Wahi (*pro hac vice*)
                                        Kari L. Vander Stoep (*pro hac vice*)
                                        Ashley E.M. Gammell (*pro hac vice*)
                                        K&L GATES LLP
                                        925 Fourth Avenue
                                        Suite 2900
                                        Seattle, Washington 98104
                                        Phone: 206.623.7580
                                        Pallavi.Wahi@klgates.com
                                        Kari.Vanderstoep@klgates.com
                                        Ashley.Gammell@klgates.com

                                        *Counsel for Defendant Starbucks*
                                        *Corporation*

## CERTIFICATE OF SERVICE

The undersigned certifies that on August 23, 2024, a true and correct copy of the foregoing and its supporting declarations was served upon the following respondents, by sending a copy to the email addresses below:

Ashley Pendleton (6328690)
James E. Griffith (6269854)
Ziliak Law LLC
141 W. Jackson Blvd., Ste 4048
Chicago, IL 60604
Tel: 312.462.3350
apendleton@ziliak.com
jgriffith@ziliak.com
docket@ziliak.com


Nicole Wing
BODUM USA, Inc.
General Counsel
 45 E. 20th Street
8th Floor
New York, NY 10003
Tel: 212.367.8844
nicole.wing@bodum.com

*/s/ Brian Smith*
Attorney for Defendant