**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

BODUM USA, INC. and PI-DESIGN AG,

                    Plaintiffs,

    v.

STARBUCKS CORPORATION,

                  Defendant.

Case No. 1:23-cv-02946

Hon. Andrea R. Wood

**DEFENDANT STARBUCKS CORPORATION'S
OPPOSITION TO PLAINTIFFS' MOTION TO
RE-OPEN FACT DISCOVERY AND EXTEND EXPERT DISCLOSURE DEADLINE**

The Court should deny Plaintiffs Bodum USA, Inc. and Pi-Design AG's (collectively, "Bodum") motion to reopen fact discovery and extend the expert disclosure deadline ("Motion"). Contrary to Bodum's statements, Starbucks Corporation ("Starbucks") has produced information responsive to each of Bodum's discovery requests after the parties carefully negotiated and agreed upon the scope of Bodum's requests and the custodians and search terms Starbucks used to collect responsive documents. These negotiations were essential because the relevant time period for discovery in this case dates back to 2007. Thus, even with the custodians and search terms agreed upon by the parties, Starbucks incurred substantial time and expense to collect and produce over 30,000 documents spanning 17 years based on Bodum's agreement that Starbucks collection criteria would satisfy Starbucks discovery obligations.

Now, four months after Starbucks made its final production of documents, and with fact discovery closed on November 15, 2024, Bodum attempts to reopen discovery, add new document requests never before sought, and extend the expert disclosure deadline because Bodum failed to do its job and request certain information it claims is necessary to support its damages theories and calculations. The Court already granted the parties' joint motions to extend the fact discovery cutoff on two previous occasions,[1] yet Bodum failed to serve additional discovery requests beyond its initial set and failed to assess whether the documents produced by Starbucks were sufficient to support its expert's needs. Bodum claims the motion is necessary "to resolve this highly important . . . issue that goes to the heart of the case" (Dkt. 70 ("Mot.") at 3), but also noted that Bodum and its attorneys were too busy "focused on the overarching case strategy, leaving the minutiae of calculating damages to their damages expert." Mot. at 6. It is unclear how such important evidence

---

[1] The Court previously granted the parties' joint motions to extend the fact discovery cutoff on March 22, 2024 (Dkt. No. 49), and August 12, 2024 (Dkt. No. 56). The Court's August 12, 2024 minute order set November 15, 2024, as the fact discovery cutoff.

of damages in a case that seeks monetary damages does not fall within the "overarching case strategy." Nevertheless, a party's damages expert is not responsible for seeking documents in discovery to support a party's damages claim; that is the party's responsibility. This is a basic aspect of litigation. Bodum had an obligation to not only seek profitability information during the nearly 18 months of fact discovery, but also to review the documents produced in a timely manner to ensure it had what it needed. The time to have sought this new set of documents was before the twice extended fact discovery cutoff.

It is clear Bodum failed to exercise normal diligence in seeking this information, and therefore Bodum fails to satisfy the good cause standard required for its Motion. Moreover, granting the Motion would unduly burden Starbucks by requiring it to incur further time and expense collecting and producing documents that could have been worked into the parties' initial discovery plan but for Bodum's lack of diligence. Granting the Motion would also prejudice Starbucks by unduly delaying resolution of this multi-year litigation. Bodum's Motion should therefore be denied.

## I. Statement of Facts

### A. Bodum Never Sought Discovery on Espro Press purchase orders or sales records.

Nearly 15 months ago, on October 2, 2023, Starbucks served its Responses and Objections to Bodum's First Set of Requests for Production of Documents, along with its Responses and Objections to Bodum's First Set of Interrogatories. Vander Stoep Decl., ¶ 3, Exs. A–B. The three requests Bodum now claims clearly sought "profitability data relating to the Espro Product" include the following:

**REQUEST NO. 6:**

All documents (dated after the execution of the 2008 Agreement) related to

Starbucks[] consideration of, or discussion about, ***whether a non-Bodum French press product would be sold***.

> **REQUEST NO. 7:**
>
> Documents sufficient to show ***what designs Starbucks believes Bodum has proposed*** to it since the execution of the 2008 Agreement.
>
> **REQUEST NO. 8:**
>
> ***For the products in Request No. 7 [related to "designs Starbucks believes Bodum has proposed"]***, documents sufficient to show the number of units sold and the price that Starbucks paid for the products.

Id., Ex. A at 6-8 (emphasis added). On their face, none of these requests seek revenue or profit data pertaining to the sale of the ***non-Bodum*** French press at issue in this litigation (the "Espro Press") or other forecasts or business plans now sought by Bodum. Bodum clearly knows how to request such information as it has done, for the first time, in its Motion on page 8. However, Bodum makes its first request for this information well after the discovery cutoff and after all fact depositions have been taken.

Even if one were to somehow extrapolate that Bodum sought financial information on Espro Press sales from Requests for Production Nos. 6-8, the parties' subsequent agreement on the scope of the production, as described below, did not include that type of information. On October 23, 2023, Bodum sent a discovery deficiency letter to Starbucks, which identified deficiencies with respect to Bodum's Requests for Production Nos. 6–8. Vander Stoep Decl., ¶ 4, Exs. C–D. With respect to Request for Production No. 6, Bodum clarified that it was seeking "documents related to Starbucks[] consideration of, or discussion about, <u>whether</u> a non-Bodum French press product <u>would</u> be sold … ." *Id.*, Ex. D at 4 (emphasis in original). There was no reference to purchase

orders or sales records for the Espro Press. *See id.*

Bodum also clarified that Request for Production No. 7 sought documents "reflecting Starbucks[] acknowledgement of *any* design proposal, whether oral or in writing, tendered ***by Bodum*** since the execution of the 2008 Settlement Agreement," and Request for Production No. 8 sought "documents sufficient to show the number of units sold and the price that Starbucks paid for any products proposed ***by Bodum*** in any form." *Id.* (emphasis added). Bodum did not reference or request Espro Press purchase orders or sales records in Requests for Production Nos. 7 and 8—the Espro Press is non-Bodum product. *Id.* Based on these negotiations, it is clear that Bodum's Requests for Production Nos. 6–8 sought two categories of information: (1) internal Starbucks correspondence regarding whether to sell a non-Bodum French Press; and (2) Starbucks consideration or sales of Bodum product proposals.

B.  The parties' agreed-upon search terms and custodians for Requests for Production Nos. 6–8 did not include production of financial sales data on the Espro Press or forecasts and business plans.

In order to further ensure that Starbucks and Bodum were agreed on the scope of Requests for Production Nos. 6-8,  the parties met and conferred on November 3, 2023, regarding Bodum's discovery deficiency letter, among other discovery issues. Vander Stoep Decl., ¶ 5. The parties resolved their discovery disputes over these requests by "provid[ing] (1) a list of custodians responsive to each RFP; and (2) propos[ing] search terms . . . ." *Id.*, Ex. C at 6 (November 3, 2023 email from Bodum's counsel Erica Schuman). For Bodum's Requests for Production Nos. 7 and 8, Bodum agreed to "provide a list of products as a starting point and w[ould] table requests concerning other products at this time." *Id.* On November 14, 2023, Starbucks provisionally agreed to Bodum's proposal regarding Bodum's Requests for Production Nos. 7 and 8, stating "Starbucks

agrees that narrowing the scope of these discovery requests to a list of specific Bodum French press products to be provided by Bodum could be a reasonable resolution to our dispute over the scope of these requests; however, Starbucks will need to review the list before it can firmly commit." *Id.* at 3 (November 14, 2023 email from Starbucks counsel Ashley Gammell). On November 17, 2023, Bodum acknowledged the parties' agreement to consider a list of Bodum French press products as proposed by Bodum and that Bodum was currently working on compiling that list. *Id.* at 1 (November 17, 2023 email from Bodum's counsel Erica Schuman). On February 9, 2024, Bodum provided a list of Bodum product designs it believes are applicable to the case. *Id.*, ¶ 6, Ex. E. The Espro Press was not on the list of products provided by Bodum. *See id.* On March 12, 2024, Bodum also sent a list of Starbucks partners[2] it believes were involved in product sourcing and would be appropriate to add to Starbucks list of custodians for its document collections for Requests for Production Nos. 6-8. *Id.*, ¶ 8, Ex. G.

On May 16, 2024, Starbucks sent a list of search terms and custodians to Bodum that it intended to use to search for documents responsive to Bodum's Requests for Production Nos. 6–8. *Id.*, Ex. F at 6–7 (May 16, 2024 email from Starbucks counsel Ashley Gammell attaching word document with lists of search terms and custodians for Requests for Production Nos. 5-8); *id.*, ¶ 9, Ex. H (May 16, 2024 attachment with lists of search terms and custodians for Requests for Production Nos. 5–8). Starbucks asked that Bodum confirm the proposed search terms and custodians were acceptable. *Id.*, Ex. F at 6–7 (May 16, 2024 email from Starbucks counsel Ashley Gammell). With respect to Request for Production No. 6, Starbucks noted how agreement on these terms was necessary to ensure the burden on Starbucks was proportional to the needs of the case:

> Starbucks is limiting its search to discussions regarding non-Bodum French press products. As you may recall from the parties' previous litigation, it is expensive for Starbucks to export entire email accounts to its discovery vendor given the number

---

[2] Starbucks refers to its employees as "partners."

of custodians involved with this case and the very long time period for which we are searching for documents. As a result, for many of the custodians, we are taking the approach of searching through M365 and only exporting data with search term hits to the discovery vendor. Please confirm that you are comfortable with the proposed search terms and custodians for RFPs 5 & 6. We have conducted some test searches, and the search terms are producing a significant but not unreasonable level of hits. We would appreciate your approval to proceed with these custodians and search terms before we proceed with exporting data to the discovery vendor.

*Id.* at 7. Starbucks made similar comments with respect to the search terms it proposed for Requests for Production Nos. 7–8. *See id.*

Bodum agreed that Starbucks list of search terms and custodians for Requests for Production Nos. 6-8 appeared acceptable. *Id.*, Ex. F at 5. Bodum also proposed an additional search string ("((French or coffee or brew or travel) w/5 press) but not Bodum") (*id.*), to which Starbucks did not agree initially. *Id.*, Ex. F at 3–5 (May 21, 2024 email from Bodum's counsel James Griffith and May 21, 2024 email from Starbucks counsel Kari Vander Stoep); *see also id.* ¶ 9. The parties met and conferred on June 3, 2024, and Starbucks agreed to use the following search string "((French or coffee or brew or travel) NEAR 5 press) NOT Bodum" and use Continuous Active Learning ("CAL") through its discovery vendor's platform to cut off review if the search string demonstrated that it was no longer producing a statistically significant level of responsive documents. *Id.* During the review process, the CAL analysis never identified a statistically low enough responsiveness rate to justify cutting off review of documents hit by Bodum's requested search string. *Id.* As a result, Starbucks document review team reviewed all documents hit by the string and produced responsive documents. *Id.*

C. Starbucks served supplemental discovery responses consistent with the parties' agreement and timely produced all non-privileged responsive documents.

On July 10, 2024, Starbucks served its First Supplemental Responses and Objections to Bodum's First Set of Requests for Production of Documents. *Id.*, ¶ 10, Ex. I. For Bodum's Request

for Production No. 7, Starbucks supplemented its response stating in part:

> Pursuant to a meet and confer of the parties and subsequent negotiations concerning Starbucks objections to Request No. 7, Starbucks conducted a reasonable search for and has produced or will produce documents or communications (1) referencing a list of certain Bodum French press products identified by Bodum's counsel, and (2) between Bodum and Starbucks discussing other Bodum French press products.

*Id.* at 8. Similarly, for Bodum's Request for Production No. 8, Starbucks supplemented its response, in part, with the following:

> Pursuant to a meet and confer of the parties and subsequent negotiations concerning Starbucks objections to Requests No. 7 and No. 8, Starbucks conducted a reasonable search for and has produced or will produce documents or communications (1) showing the number of units sold and the price that Starbucks paid for a list of certain Bodum French press products identified by Bodum's counsel, and (2) showing the number of units sold and the price that Starbucks paid for other Bodum French press products.

*Id.* at 9-10.

On August 18, 2024, Starbucks produced its final document production noting to Bodum: "Starbucks Seventh and final Document Production is now ready for you to download." Vander Stoep Decl., ¶ 11, Ex. J. In total, Starbucks produced 30,484 documents and incurred $220,000 in K&L Gates attorneys' fees to develop document collection strategies and review Starbucks documents for responsiveness, privilege, and protective order confidentiality designations. *Id.*, ¶ 11. Starbucks incurred an additional cost of $535,321 for its e-discovery vendor's fees associated with Starbucks collection, review, and production of these documents. *Id.* Prior to the close of fact discovery, Bodum did not raise any further objections to Starbucks productions in response to Bodum's Requests for Production Nos. 6–8. *Id.*, ¶ 12. Nor did Bodum issue any additional discovery requests for Espro Press purchase orders or sales records or other damages-related documents. *Id.*

D. <u>Bodum demanded new categories of documents one month after the close of discovery and ambushed Starbucks over the holidays with an untimely discovery</u>

motion.

On November 15, 2024, fact discovery closed. Mot. at 2. On December 17, 2024, a month after the close of fact discovery and four months after Starbucks final document production, Bodum's counsel sent an email to Starbucks counsel stating that Bodum "ha[s] poured over the data provided in Starbucks[] productions and do not see that the ***purchase orders or other sales records for the Espro product*** at issue in the 2023 case were ever produced." *Id.*, ¶ 13, Ex. K at 2 (December 17, 2024 email from Bodum's counsel Nicole Wing). Bodum asked that Starbucks "direct [Bodum] to these documents" or "arrange for a supplemental production." *Id.* Starbucks responded that it disagrees that Bodum's new requests are encompassed in any of Bodum's Requests for Production. *Id.* at 1–2 (December 18, 2024 email from Starbucks counsel Kari Vander Stoep). On December 19, Bodum requested to meet and confer. *Id.* at 1 (December 19, 2024 email from Bodum counsel Nicole Wing). The next day, while Starbucks was considering Bodum's request, Bodum filed the instant Motion.

Rather than limiting its Motion to "purchase orders or other sales records for the Espro product," as requested in its email to Starbucks (*id.* at 2), Bodum broadened its demand for untimely new discovery to include: (1) Starbucks profitability data relating to the Espro Product; (2) forecasts and business plans related to the parties' relationship; (3) forecasts and business plans related to Starbucks sales of the Espro Product; and (4) any documents relating to potential arguments surrounding mitigation of damages. Mot. at 2 ("New Requests"); *see also id.* at 8.

## II.     Legal Standard

"The decision whether to grant a motion to reopen discovery rests within the district court's sound discretion." *Winters v. Fru-Con, Inc.*, 498 F.3d 734, 743 (7th Cir. 2007). "That discretion is considerable: case management depends on enforceable deadlines, and discovery 'must have an

end point.'" *Flint v. City of Belvidere*, 791 F.3d 764, 768 (7th Cir. 2015). Federal Rule of Civil

Procedure 16(b)(4) only allows a schedule to be modified for good cause and with the Court's

consent. "Unlike the relatively lenient 'good cause' standard under Rule 6, 'when used in Rule

16(b)(4), case law establishes that the term 'good cause' imposes a much heavier burden.'" *Kapila*

*v. Vallera*, No. 20 C 1760, 2022 WL 20652620, at *1 (N.D. Ill. Jan. 14, 2022). "In fact, Rule

16(b)(4)'s 'good cause' requirement, which focuses on diligence, is more onerous than Rule

6(b)(1)(B)'s 'excusable neglect.'" *Id.*; *see also Mims v. City of Chicago*, No. 18 C 7192, 2021 WL

5006649, at *3 (N.D. Ill. Oct. 28, 2021) ("The 'good cause' standard can take in a number of

considerations, but primarily considers the diligence of the party seeking amendment.").

### III.   Argument

A.   Bodum has no legitimate excuse for its lack of diligence in requesting the new
         discovery it seeks.

While Bodum argues that it "energetically pursued discovery as a whole," Bodum wholly

failed to pursue the New Requests until bringing this Motion. Mot. at 4. Courts in this District have

routinely denied motions to reopen discovery where the movant fails to show that they were

diligent or excuse their lack of diligence. *See, e.g., G.M. Sign, Inc. v. Groupe Cirque du Soleil,*

*Inc.*, No. 09 C 7692, 2011 WL 13383225, at *2 (N.D. Ill. Dec. 5, 2011) (denying motion to reopen

discovery where plaintiff sought responses to its document requests because plaintiff provided no

justification for its failure to file a motion to compel before the close of fact discovery); *Signal*

*Fin. Holdings LLC v. Looking Glass Fin. LLC*, No. 17 C 8816, 2021 WL 4940865, at *5 (N.D. Ill.

June 10, 2021) (finding "Plaintiffs' assertion that the last couple of weeks of discovery were

extraordinarily busy" did not excuse plaintiffs failure to raise these issues prior to the close of

discovery and did not amount to good cause); *Henyard v. MV Transp.*, No. 1:15-CV-10835, 2020

WL 7027540, at *6 (N.D. Ill. Nov. 29, 2020) (denying motion to reopen discovery where plaintiff provided "'no good-cause explanation for why she is only now pursuing this discovery' when the case has 'been pending for an extensive time'"). Bodum's Motion should be denied for the same reasons.

Bodum issued Requests for Production Nos. 6–8 in August 2023, and carefully negotiated the scope of Starbucks response, including custodians and search terms, over the course of the following year. Vander Stoep Decl., ¶¶ 4–10, Exs. C–I. During this 12-month timeframe, Bodum never once referenced or sought documents responsive to the New Requests. *See id.* Bodum also failed to seek testimony related to the New Requests through depositions, even though Bodum acknowledges it deposed "eight Starbucks employees with intimate knowledge of the sales data and strategies for the Espro Product . . . ." Mot. at 5. Bodum's only excuse is that "Plaintiff did not realize that this data was missing f[ro]m Starbucks[] production until after fact discovery closed." *Id.* at 5-6. Put differently, Bodum simply forgot or did not think to propound the New Requests until a month after the close of discovery and four months after Starbucks made its final production. Bodum's justification fails under Rule 16's good cause standard. *See G.M. Sign, Inc.*, 2011 WL 13383225, at *2; *Signal Fin. Holdings LLC*, 2021 WL 4940865, at *5; *Henyard*, 2020 WL 7027540, at *6.

Bodum cites to *Sonrai Systems* for the proposition that courts have reopened fact discovery where discovery could have been previously obtained when the discovery could impact the analysis of plaintiff's damages expert. Mot. at 4. But *Sonrai Systems* is inapposite. There, the non-movant defendants agreed to allow depositions to proceed despite the close of fact discovery. *Sonrai Sys. v. Romano*, No. 16 C 3371, 2021 WL 12318777, at *2 (N.D. Ill. Jan. 20, 2021). Although the names of the deponents appeared on documents, the plaintiff implied it only recently

-11-

learned of the five deponents' intimate involvement in the defendants' alleged scheme and these deponents were never properly disclosed by defendants. *Id.* at *1. Unlike the defendants in *Sonrai Systems*, Starbucks opposes Bodum's Motion in full. Further distinguishing this case from *Sonrai Systems*, Bodum does not and cannot allege that Starbucks failed to disclose a material fact witness relevant to its damages claims. Starbucks did not fail to disclose anything. Bodum simply failed to propound requests for production necessary to establish its damages claim or ask questions during the depositions of the "eight Starbucks employees with intimate knowledge of the sales data and strategies for the Espro Product" when Bodum had the opportunity. Mot. at 5. Moreover, Starbucks notes that in response to Bodum's Interrogatory No. 3 ("Identify all individuals with knowledge of Starbucks[] sales data related to the design, sourcing and/ or sale of the Espro Press."), Starbucks identified the four following Starbucks partners: Kate Ivy, Gretchen Kulesza, Chang Miao, and Sarah Taylor. Vander Stoep Decl., ¶ 3, Ex. B. Starbucks served its interrogatory responses on October 2, 2023. *Id.* Between October 2, 2023, and the close of discovery on November 15, 2024, Bodum never requested to depose these four Starbucks partners. *Id.*, ¶ 3. [3] *Sonrai Systems* does not support Bodum's request to reopen discovery, and a comparison to the facts of this case demonstrates Bodum's lack of diligence.

Bodum and Starbucks participated in months of correspondence and meet-and-confers that detailed the specific process by which Starbucks would search for responsive documents. Because Bodum has offered no good-cause explanation for its failure to request the categories of documents it now seeks more than a month after the close of fact discovery, this Court should deny Bodum's

---

[3] Bodum alleges that the documents it now requests will not only be useful for its damages expert, but "would be helpful to topics that Plaintiffs intend to address with Howard Schultz during his deposition should it go forward, and Mr. Schultz's testimony, in turn, is likely to bear on the analysis of Plaintiff's expert." Mot. at 7. As detailed in Starbucks Motion for Protective Order, and accompanying declaration of Mr. Schultz, Mr. Schultz has no knowledge regarding the Espro French press or its sales. *See* Dkt. No. 58 at 5; *see also* Dkt. No. 58-1, ¶¶ 8–9.

Motion. *Kapila*, 2022 WL 20652620, at *1; *see also Mims*, 2021 WL 5006649, at *3.

B. <u>Starbucks produced all non-privileged documents responsive to Bodum's Requests for Production Nos. 6–8.</u>

1. *The New Requests are not within the scope of Bodum's Requests for Production Nos. 6–8.*

While Bodum asserts that it is missing "documents evidencing Starbucks[] profitability data for the Espro Product or any other product at issue" and "documents related to potential arguments around mitigation of damages or forecasts/business plans regarding the parties' relationship and/or Starbucks sales of non-Bodum products at issue," the plain language of Bodum's document requests did not encompass this information. Mot. at 5. Bodum asserts that these documents are responsive to its Requests for Production Nos. 6–8, which requested the following:

**REQUEST NO. 6:**

All documents (dated after the execution of the 2008 Agreement) related to Starbucks[] consideration of, or discussion about, whether a non-Bodum French press product would be sold.

**REQUEST NO. 7:**

Documents sufficient to show what designs Starbucks believes Bodum has proposed to it since the execution of the 2008 Agreement.

**REQUEST NO. 8:**

For the products in Request No. 7, documents sufficient to show the number of units sold and the price that Starbucks paid for the products.

Vander Stoep Decl., ¶ 3, Ex. A at 6–8.

Nowhere in Bodum's Requests for Production Nos. 6–8 does Bodum request "documents evidencing Starbucks[] profitability data for the Espro Product or any other product at issue" or "documents related to potential arguments around mitigation of damages or forecasts/business

plans regarding the parties' relationship and/or Starbucks sales of non-Bodum products at issue." *See* Vander Stoep Decl., ¶ 3, Ex. A at 6–8. Bodum's Request for Production No. 6 seeks documents relating to the consideration of, or discussion about, whether a non-Bodum French press product would be sold. *Id.*, Ex. A at 6. The plain language of Bodum's Request for Production No. 6 does not encompass documents related to the "profitability" of the Espro Press, nor "arguments around mitigation of damages" or "forecast/business plans"—rather, Request for Production No. 6 only encompasses documents addressing whether Starbucks would sell non-Bodum French presses.

Bodum's Request for Production No. 7 is an even further stretch. This Request seeks information related to designs **Bodum** has proposed to Starbucks. *Id.*, Ex. A at 7. The Espro Press, which is not sold by Bodum, plainly does not fall within this Request. Similarly, for Bodum's Request for Production No. 8, Bodum only seeks documents sufficient to show the number of units sold and the price Starbucks paid for Bodum product designs responsive to Request for Production No. 7. *Id.*, Ex. A at 8. Like Request for Production No. 7, Request for Production No. 8 does not encompass the Espro Press, nor does it encompass Starbucks profitability on such products, nor were "arguments around mitigation of damages" or "forecasts/business plans" requested. Bodum's argument that its New Requests fall within Requests for Production Nos. 6–8 is not supported by the plain language of its document requests.

> 2. *Although Starbucks produced some documents including sales information related to the Espro Press, the production of those documents does not demonstrate Starbucks understood or agreed to produce the scope of documents Bodum now seeks in its New Requests.*

While Bodum states that Starbucks has not produced information related to four categories of documents ("(1) Starbucks's profitability data relating to the Espro Product; (2) forecasts and

business plans related to the parties' relationship; (3) forecasts and business plans related to Starbucks[] sales of the Espro Product; and (4) any documents relating to potential arguments surrounding mitigation of damages"), this is not true. While Bodum never sought such data on the Espro Press, or forecasts and business plans, some sales information was produced. Mot. at 2, 6; Vander Stoep Decl., ¶ 14, 15. This, however, was not because Starbucks understood such documents or data were captured by Requests for Production Nos. 6-8; instead, these documents simply happened to fall within the search terms and parameters of production agreed-upon by the parties. Starbucks production of documents with such sales data does not demonstrate that Starbucks and Bodum agreed that Bodum's Requests for Production Nos. 6–8 required Starbucks to search for the sales, profitability, forecast, and business plan data that Bodum now seeks. In fact, as the parties' discovery correspondence and meet and confers demonstrate (*id.*, ¶¶ 2-10, Exs. A-I), the scope, search terms, and custodians agreed to by the parties were not intended or designed to capture the documents and data that Bodum now seeks. When Bodum reviewed Starbucks document productions (which were final three months prior to the close of fact discovery (*id.*, ¶ 11, Ex. J)) and encountered what it now calls "a gaping information hole in [its] damages calculation" (Mot. at 6), it should have served an additional set of requests for production prior to the close of fact discovery.

Starbucks opposition and supporting declaration demonstrate that Starbucks acted in good faith to provide Bodum with non-privileged documents responsive to Requests for Production Nos. 6–8. Bodum's belated request for documents is the result of Bodum's lack of diligence, and Bodum's alone.

      C. <u>Reopening discovery and extending Bodum's expert disclosure deadline presents a</u>

<u>significant prejudice to Starbucks and will come at a significant cost to Starbucks.</u>

Reopening discovery and extending Bodum's expert disclosure deadline presents a significant prejudice to Starbucks. Bodum filed this lawsuit on May 10, 2023. Dkt. No. 1. The parties worked together to develop a common understanding of their discovery requests. Vander Stoep Decl., ¶¶ 4-10, and Exs. C-I. The parties also agreed to two extensions of the discovery deadlines to accommodate (i) the significant burden of the scope of custodians and time frame at issue in this case, and (ii) Bodum's changes in counsel. *See* Dkt. Nos. 31, 32, 48, 49, 55, 56. While Starbucks prioritizes and values being a cooperative litigant, Bodum has had months to evaluate the scope of its discovery requests, Starbucks document productions, and the needs of its expert witnesses. Under the current case schedule, dispositive motions are due on March 28, 2025. Dkt. No. 56. Starbucks believes this case will be disposed of on summary judgment, and reopening discovery will delay bringing this case to a close at additional time and costs to Starbucks. Furthermore, as explained in Starbucks Motion to Bifurcate and Stay Count II in Case No. 1:24-cv-05319 (Dkt. No. 20), Bodum filed the exact same breach of contract claim in that case as in this case. Starbucks requested that the Court bifurcate and stay the breach of contract claim in that case because Starbucks contends it will be resolved in the current case. Further delays in this case also impact the efficient resolution of Count II in Case No. 1:24-cv-05319.

Starbucks worked with Bodum to develop mutually agreeable search terms and custodians to avoid unnecessary discovery disputes and motions practice while ensuring the burden of discovery on Starbucks is proportional to the needs of the case. Vander Stoep Decl., ¶ 7, Ex. F at 6–7 (May 16, 2024 email from Starbucks counsel Kari Vander Stoep). In fact, Starbucks produced over 30,000 documents and incurred more than $750,000 in legal costs and fees collecting, reviewing, and producing documents responsive to Bodum's discovery requests. *Id.*, ¶ 11. With

fact discovery now closed, Bodum seeks a re-do. Granting this request will come at a significant additional cost to Starbucks, as it will be required to collect and review additional documents in a manner that could have been achieved more efficiently during the discovery period (*id.*, Ex. F at 6–7), and will further delay resolution of this case and Count II in Case No. 1:24-cv-05319. Even if the Court finds there is no prejudice to Starbucks, "a lack of prejudice by itself does not establish good cause under Rule 16." *Smith v. City of Chicago*, No. 21 C 1159, 2023 WL 5211667, at *4 (N.D. Ill. Aug. 14, 2023); *see also Alight Sols. v. Thomson*, No. 20 C 3043, 2021 WL 5119111, at *2 (N.D. Ill. Nov. 3, 2021). The primary focus is on the diligence of the party seeking the extension.

> D. <u>Bodum's request for an extension of its expert disclosure deadline should be denied for the same reasons as Bodum's request to reopen fact discovery.</u>

Bodum's request for an extension of its expert disclosure deadline stems from the same request to re-open fact discovery—that Bodum became aware after the close of fact discovery that it failed to seek discovery it now desires to support its damages claim. Bodum boldly asserts that it has been diligent in both requesting discovery and consulting with its damages expert, but somehow "this information gap did not come to Plaintiffs' attention until nearly a week before the expert disclosure deadline." Mot. at 9. Bodum fails to explain how its "diligence" led to such a result. Because there is no justification for Bodum's request to reopen fact discovery, this Court should similarly deny Bodum's request to extend the expert disclosure deadline.

## CONCLUSION

Bodum has not shown that its failure to obtain the category of documents requested in its Motion rises to the level of good cause. Throughout discovery Starbucks worked diligently with Bodum to agree upon the scope of the production in response to Bodum's requests. With fact

discovery now closed, Bodum does not get a "do over" to request documents it did not seek during discovery. In turn, if Bodum's request to reopen fact discovery is denied, Bodum's request to extend its expert discovery deadline should also be denied. Because Bodum has not met the good cause standard under Federal Rule 16(b)(4), this Court should deny Bodum's Motion to Re-Open Fact Discovery and Extend Expert Disclosure Deadline.[4]

DATED:  January 6, 2025                    Respectfully submitted,

                                           */s/ Kari L. Vander Stoep*

                                           **K&L Gates LLP**

                                           Brian J. Smith
                                           ARDC No. 6321543
                                           K&L GATES LLP
                                           70 West Madison Street
                                           Suite 3300
                                           Chicago, Illinois 60602
                                           Phone: 312.807.4448
                                           Brian.J.Smith@klgates.com

                                           Pallavi Mehta Wahi (*pro hac vice*)
                                           Kari L. Vander Stoep (*pro hac vice*)
                                           Ashley E.M. Gammell (*pro hac vice*)
                                           K&L GATES LLP
                                           925 Fourth Avenue
                                           Suite 2900
                                           Seattle, Washington 98104
                                           Phone: 206.623.7580
                                           Pallavi.Wahi@klgates.com
                                           Kari.Vanderstoep@klgates.com
                                           Ashley.Gammell@klgates.com

                                           *Counsel for Defendant Starbucks Corporation*

---

[4] If the Court grants Bodum's Motion (which is not warranted), Starbucks respectfully requests that the Court order Bodum to reimburse Starbucks for the costs and fees of searching for, reviewing, and producing documents responsive to the New Requests.

## CERTIFICATE OF SERVICE

The undersigned certifies that on January 6, 2025, a true and correct copy of the foregoing and its supporting declarations was served upon the following respondents, by sending a copy to the email addresses below:

Ashley Pendleton (6328690)
James E. Griffith (6269854)
Ziliak Law LLC
141 W. Jackson Blvd., Ste 4048
Chicago, IL 60604
Tel: 312.462.3350
apendleton@ziliak.com
jgriffith@ziliak.com
docket@ziliak.com


Nicole Wing
BODUM USA, Inc.
General Counsel
 45 E. 20th Street
8th Floor
New York, NY 10003
Tel: 212.367.8844
nicole.wing@bodum.com


*/s/ Brian Smith*
**Attorney for Defendant**