IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

BODUM USA, INC. and PI-DESIGN AG,

        Plaintiffs,

v.

STARBUCKS CORPORATION,

        Defendant.

Case No. 1:23-cv-02946

Hon. Andrea R. Wood

**DEFENDANT STARBUCKS CORPORATION'S RULE 56.1 STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE**

Pursuant to Local Rule 56.1(a)(2) and 56.1(d), Defendant Starbucks Corporation ("Starbucks") respectfully submits this Statement of Material Facts as to Which There Is No Genuine Dispute:

**The Parties**

1. Starbucks is a corporation organized and existing under the laws of the State of Washington, with its principal place of business in Seattle, Washington. Amended Compl. at ¶ 5 (Dkt. No. 9) (the "Compl."); Starbucks Answer, Affirmative Defenses, and Counterclaim at ¶ 5 (Dkt. No. 18) (referred to as the "Answer" and/or "Counterclaim"); Counterclaim at ¶ 9.

2. Plaintiff Bodum USA, Inc. ("Bodum") is a corporation organized and existing under the laws of Delaware with its principal place of business in New York, New York. Compl. at ¶ 2. Bodum is in the business of selling non-electric coffee makers, amongst other related items, throughout the United States, including this Judicial District. Compl. at ¶ 3.

3. Plaintiff Pi-Design AG ("Pi-Design") is headquartered in Lucerne, Switzerland, and is a subsidiary of Bodum Holding AG. Compl. at ¶ 4. Pi-Design is engaged in the business of design, development, and licensing of specialty housewares. *Id*.

**Jurisdiction and Venue**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs. Compl. at ¶ 6; Answer at ¶ 6; Counterclaim at ¶ 10; Plaintiffs' Answer to Counterclaim (Dkt. No. 20) at ¶ 10.

5. Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to execution of a settlement agreement between the parties in 2008 occurred in this District. Compl. at ¶ 7; Answer at ¶ 7; Counterclaim at ¶ 11; Answer to Counterclaim at ¶ 11.

**The 2007 Lawsuit and the 2008 Settlement Agreement**

6. In 2007, Plaintiffs filed a lawsuit against Starbucks captioned *Bodum USA, Inc. and Pi-Design AG v. Starbucks, Inc.*, Case No. 07-CV-5303 (N.D. Ill. 2007) (the "2007 Compl."), which alleged, among other things, that a Starbucks French press coffeemaker referred to as the "Anniversary Press" infringed Bodum's Chambord trade dress under 15 U.S.C. § 1125(a) (the "2007 Lawsuit"). Counterclaim at ¶ 13; Answer to Counterclaim at ¶ 13; 2007 Compl., a copy of which is attached to the Declaration of Kari L. Vander Stoep (the "Vander Stoep Decl.") as Exhibit 1.

7. In the 2007 Lawsuit, in addition to its trade dress allegations, Bodum alleged that it had presented a prototype to Starbucks during the design and development phase of the Anniversary Press, and that Starbucks developed the allegedly infringing product with a different supplier. Counterclaim at ¶ 14; Answer to Counterclaim at ¶ 14; Email from J. Bodum to H. Roberts dated January 10, 2008, at BDM_0049088 (the "January 10, 2008 Email"), attached to the Vander Stoep Decl. as Exhibit 2; Deposition of Thomas Perez ("Dep. of T. Perez") at 22:12–23:3,

excerpts of which are attached to the Vander Stoep Decl. as Exhibit 3.

*Discussions between the Parties regarding Settlement of the 2007 Lawsuit*

8. David Bennett was Bodum's outside counsel during the 2007 Lawsuit and was Starbucks principal contact at Bodum during the initial negotiations of the settlement until it was "transferred from the lawyers . . . to the business people . . . Thomas Perez . . . and Mr. [Jorgen] Bodum." Deposition of David Bennett ("Dep. of D. Bennett") at 18:18–19:2, 66:25–67:9, excerpts of which are attached to the Vander Stoep Decl. as Exhibit 4.

9. Kathleen Albrecht, Starbucks in-house counsel, was involved in negotiations with Mr. Bennett regarding the "issue involving the Anniversary Press," and related settlement discussions. Deposition of Kathleen Albrecht ("Dep. of K. Albrecht") at 24:22–25:19, excerpts of which are attached to the Vander Stoep Decl. as Exhibit 5.

10. During these negotiations, Ms. Albrecht expressly rejected Mr. Bennett's offer ▇ ▇ ▇ Email from K. Albrecht to D. Bennett dated November 8, 2007, at BDM_0000367, attached to the Vander Stoep Decl. as Exhibit 6 ▇ ▇

11. Ms. Albrecht rejected ▇ ▇ ▇ ▇ Email from K. Albrecht to D. Bennett dated November 14, 2007, at BDM_0000425, attached to the Vander Stoep Decl. as Exhibit 7.

12. While Ms. Albrecht stated ▇ ▇ there is no evidence of Bodum agreeing to the same. *See id.*

13. Mr. Bennett testified that ▇



██████████████████████████ Exhibit 4 (Dep. of D. Bennett) at 97:4–16 ██████████

14. Starbucks revised Section 1 ████████████████████████████████████

████████████████████████████████████. Exhibit 3 (Dep. of T. Perez) at 74:7–24.

<u>Howard Schultz's Return as ceo of Starbucks, and his Instruction to Harry Roberts</u>

15. In January 2008, Howard Schultz returned to Starbucks for a second term as ceo, and asked Harry Roberts to join the company as senior vice president and chief creative officer. Declaration of Howard Schultz in Support of Starbucks Motion for Protective Order (Dkt. No. 58-1) (the "Schultz Decl.") at ¶ 5.

16. At that time, Mr. Schultz tasked Mr. Roberts with resolving the pending litigation with Bodum. *Id.*; Deposition of Howard Schultz ("Dep. of H. Schultz") at 12:17–21, excerpts of which are attached to the Vander Stoep Decl. as Exhibit 8.

17. Mr. Schultz does not recall providing Mr. Roberts with any direction on how the dispute should be resolved beyond directing Mr. Roberts to work with Bodum's CEO, Jorgen Bodum, and Starbucks legal department to resolve the litigation. Schultz Decl. at ¶¶ 4–6 (Mr. Schultz "was not a participant in settlement negotiations or strategy, nor execution of the 2008 [S]ettlement [A]greement. To the best of [his] knowledge, [he] ha[s] never read the 2008 [S]ettlement [A]greement."); Exhibit 8 (Dep. of H. Schultz) at 12:25–13:3. Mr. Schultz likewise

did not give any direction to Mr. Roberts, or anyone else at Starbucks about sourcing French presses from Bodum. *Id.* (Dep. of H. Schultz) at 13:25–14:12.

*Discussions between Jorgen Bodum and Harry Roberts Regarding Settlement of the 2007 Lawsuit*

18. On January 10, 2008, Mr. Bodum emailed Mr. Roberts, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 2 (January 10, 2008 Email) (emphasis added).

19. Mr. Bodum told Mr. Roberts in the January 10, 2008 Email ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*

20. Mr. Bodum testified that after he sent the January 10, 2008 Email, he told Mr. Roberts during a phone call that Starbucks will "just have to write me a little line and say, we're very sorry we copied Bodum, will never happen again, then it's gone . . . . And after that we agreed on the 2008 [Agreement]." Deposition of Jorgen Bodum ("Dep. of J. Bodum") at 103:11–104:9, excerpts of which are attached to the Vander Stoep Decl. as Exhibit 9.

21. Mr. Bodum further testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 111:22–112:14 (referring to testimony of J. Bodum at 103:11–104:9).

22. Mr. Roberts testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Deposition of Harry Roberts ("Dep. of H. Roberts") at 55:10–56:3, excerpts of which are attached to the Vander Stoep Decl. as Exhibit 10.

23. Mr. Bodum submitted a sworn declaration to the Court, which avers ▮▮

███████ Declaration of Jorgen Bodum (Dkt. No. 63-1) (the "Bodum Decl.") at ¶ 7.

24. During his deposition, Mr. Bodum testified as follows:



Exhibit 9 (Dep. of J. Bodum) at 232:8–235:12.

25. Mr. Bodum does not ████████████████



*Id.* at 232:8–235:12 (testifying ████████████); *id.* at 130:1–131:7; 135:7–139:3; 142:17–145:24 (████████████████).

*Execution of the Settlement Agreement to the 2007 Lawsuit*

26. On or about January 14, 2008, Starbucks and Plaintiffs entered into a Confidential

Settlement Agreement (the "2008 Settlement Agreement" or "Agreement"). Counterclaim at ¶ 12; Answer to Counterclaim at ¶ 12. The 2008 Settlement Agreement settled the 2007 Lawsuit. 2008 Settlement Agreement at Recitals, attached to the Vander Stoep Decl. as Exhibit 11; Compl. at ¶ 15.

27. The 2008 Settlement Agreement attached at Vander Stoep Declaration Exhibit 11 is a true and correct copy of the agreement. *See* Defendant Starbucks Corporation's First Set of Requests for Admission 1–11 to Plaintiffs Bodum USA, Inc. and Pi-Design AG at RFA No. 1, attached to the Vander Stoep Decl. as Exhibit 12; Plaintiffs Bodum USA, Inc. and Pi-Design AG's Response to Defendant Starbucks First Set of Requests for Admission at RFA No. 1, attached to the Vander Stoep Decl. as Exhibit 13.

28. ███████████████████████████████████████████████████████████

███████████████████████████████████████████. *See* Exhibit 11 (2008 Settlement Agreement) at Section 1.

29. The 2008 Settlement Agreement contains the following recitals:



Exhibit 11 (2008 Settlement Agreement) at Recitals.

30. Section 1 of the 2008 Settlement Agreement contains the following language:



-7-



Exhibit 11 (2008 Settlement Agreement) at Section 1.

31. The 2008 Settlement Agreement ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See generally* Exhibit 11 (2008 Settlement Agreement); *see also* Exhibit 9 (Dep. of J. Bodum) at 49:13–18 (testifying that the 2008 Settlement Agreement does not have an expiration date).

32. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Exhibit 11 (2008 Settlement Agreement); Exhibit 9 (Dep. of J. Bodum) at 49:22–50:2.

33. Thomas Perez, Bodum USA, Inc.'s then-President, signed the 2008 Settlement Agreement on behalf of Plaintiffs. Exhibit 11 (2008 Settlement Agreement) at 4. Mr. Perez was previously the President and CEO of Bodum USA, Inc. Exhibit 3 (Dep. of T. Perez) at 14:8–10.

34. Harry Roberts signed the 2008 Settlement Agreement on behalf of Starbucks. Exhibit 11 (2008 Settlement Agreement) at 4.

<u>Deposition Testimony from Individuals involved in Negotiation and Execution of the 2008 Settlement Agreement</u>

35. Mr. Bennett testified that there was no language in Section 1 of the 2008 Settlement Agreement that obligated Starbucks to source all French presses from Bodum unless Bodum gave Starbucks permission to source French presses elsewhere. Exhibit 4 (Dep. of D. Bennett) at 92:2–7.

36. Mr. Bennett testified ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████. *Id.* at

96:22–25, 97:10–16.

      37.    Mr. Bennett ████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████ *Id.* at 75:3–20.

      38.    Mr. Bennett ████████████████████████████████

███████████████████████████████████████████████████████████

████ *Id.* at 97:18–24.

      39.    Mr. Perez testified ██████████████████████████

███████████████████████████████████████████████████████████

██████████████████████████████████████████████. Exhibit 3

(Dep. of T. Perez) at 58:13–20.

      40.    Although former Bodum executive Mr. Perez █████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████ *Id.* at 90:15–91:25.

      41.    Mr. Perez testified ██████████████████████████

███████████████████████████████████████████████████████████

████████████████████ *Id.* at 92:6–11.

      42.    Mr. Perez ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████ *Id.* at 161:5–13.

-9-

43. When Mr. Roberts signed the Agreement on behalf of Starbucks, ███████████████████████████████████████████████████████████████████████████████████████████████ Exhibit 10 (Dep. of H. Roberts) at 68:15–21.

44. When Mr. Roberts signed the Agreement on behalf of Starbucks, ███████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 68:2–14, 70:4–71:5.

45. Mr. Roberts ███████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 68:22–69:4.

46. Mr. Roberts testified that he would not have signed an agreement with Bodum that contained an exclusivity or right of first refusal provision because it is not good business, and that "[i]t locks you in a position that isn't necessarily good for your company or the consumer." *Id.* at 37:25–38:14.

47. Mr. Roberts ███████████████████████████████████████████████████████████████████████████████████████████████ *Id.* at 43:15–45:14.

48. Mr. Bodum, in a declaration submitted to this Court prior to his deposition, stated ███████████████████████████████████████████████████████████████████████████████████████████████ Dkt. No. 63-1 (Bodum Decl.) at ¶ 8.

49. Mr. Bodum testified ███████████████████████████████████████████████████████████████████████████████████████████████ Exhibit 9 (Dep. of J. Bodum) at 145:3–7.

-10-

50. Mr. Bodum, during his deposition, testified that Bodum's purported right of first refusal came from the words in the 2008 Settlement Agreement, and nothing else. *Id.* at 49:2–12.

51. Mr. Bodum, when asked whether he could "point to the language" in Section 1 of the 2008 Settlement Agreement that required Starbucks to buy all French presses from Bodum unless Bodum said it didn't want to supply them, stated that he could not do so. *Id.* at 166:7–19.

52. Mr. Bodum testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 236:20–24.

53. Mr. Bodum testified ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 116:22–117:24.

*Starbucks Statements and Conduct regarding the 2008 Settlement Agreement from 2008 to 2013*

54. Mr. Roberts ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 10 (Dep. of H. Roberts) at 69:5–12.

55. Mr. Roberts testified that after the 2008 Settlement Agreement was executed "We were going to do business with [Bodum] . . . if he had the product that we wanted to put in the stores . . . ." *Id.* at 37:2–9.

56. Mr. Roberts testified that while his practice was "to always go to the preferred supplier who had the best quality product," he did not instruct his team to approach Bodum first or offer Bodum a ROFR because "I don't think it's good business. It locks you in to a position that isn't necessarily good for your company or the consumer." *Id.* at 37:10–18, 37:25–38:14.

57. Lisa Harpster, a Starbucks partner, did not participate in settlement negotiations or read the 2008 Settlement Agreement until many years after it had been executed. Deposition of Lisa Harpster ("Dep. of L. Harpster") at 13:19–24 ("I was not aware, did not get to see the actual

-11-

agreement."), excerpts of which are attached to the Vander Stoep Decl. as Exhibit 14.

58. Ms. Harpster testified that while it was not a contractual requirement that Starbucks purchase from Bodum, Bodum was viewed as a "preferred" provider of French press products. Exhibit 14 (Dep. of L. Harpster) at 14:9–13 ("No, I don't believe that we were using -- there was any exclusivity there. There was a -- can I say not a directive, but [a] push to use our preferred suppliers, and Bodum was definitely our preferred supplier at the time.").

59. Alice Chi Martin, a former Starbucks sourcing executive, did not participate in settlement negotiations or read the 2008 Settlement Agreement until many years after it had been executed. Deposition of Alice Chi Martin ("Dep. of A. Martin") at 19:15–21, excerpts of which are attached to the Vander Stoep Decl. as Exhibit 15.

60. Ms. Martin testified ███████████████████████████████████████████████████████████████████████████ Exhibit 15 (Dep. of A. Martin) at 31:6–12.

61. Ms. Martin testified that the 2008 Settlement Agreement does not contain an exclusivity agreement or ROFR but did prohibit Starbucks from copying Bodum's Chambord press. *Id.* at 29:22–24 ("It did not provide Bodum as the sole supplier of all French presses to Starbucks"); *id*. at 29:3–8 ("I ensured we weren't copying the Chambord.").

*The Parties' Execution of the Third Amendment to the Master Purchase Agreement*

62. In 2013, Bodum and Starbucks executed the Third Amendment to the Master Purchase Agreement, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Third Amendment and Supplement to Master Purchase Agreement (the "Third Amendment to the MPA") at Paragraph 5.1 & Schedule 5, attached to the Vander Stoep Decl. as Exhibit 16.

63. Starbucks terminated the Third Amendment to the MPA on October 2, 2020, and the termination became effective on December 31, 2020. Bodum's Supplemental Response to Defendant Starbucks Corporation's First Set of Requests for Admission at RFA No. 5, attached to the Vander Stoep Decl. as Exhibit 17.

**Prior Litigation Involving the 2008 Agreement**

64. An affiliate of Bodum previously sued Starbucks in 2019 in a lawsuit captioned *Bodum Holding AG et al. v. Starbucks Corporation*, C.A. 1:19-cv-04280-ER (S.D.N.Y. 2019) (the "2019 Lawsuit"), alleging that Starbucks breached the 2008 Settlement Agreement. Counterclaim at ¶ 26; Answer to Counterclaim at ¶ 26; *see* Third Amended Compl., 2019 Lawsuit (1:19-cv-04280-ER Dkt. No. 92), a copy of which is attached to the Vander Stoep Decl. as Exhibit 18 (the "2019 Lawsuit Compl.").

65. The 2019 Lawsuit alleges that Starbucks breached the 2008 Settlement Agreement by selling non-Bodum double-walled glass products that "intentionally embody Bodum designs that have been identified to Starbucks as proposed designs" after Bodum had proposed specific double-walled glassware products to Starbucks. Counterclaim at ¶ 26; Answer to Counterclaim at ¶ 26; Exhibit 18 (2019 Lawsuit Compl.) at ¶¶ 3, 106–112, 134(d).

66. The 2019 Lawsuit Complaint does not contain any allegations that the 2008 Settlement Agreement granted Bodum exclusivity or a right of first refusal with respect to French press product offerings, or any other product developed or sold by Starbucks. Exhibit 18 (2019 Lawsuit Compl.) at ¶ 112 ("By copying Bodum's designs []whether using known Bodum factories or not, Starbucks is circumventing Bodum in the supply chain process. This allows Starbucks to profit from products that carry the image of the reputation created by Bodum in these designs without having to compensate Bodum. This conduct is what the 2008 Settlement Agreement was

designed to prohibit.").

67. The 2019 Lawsuit Complaint does not allege Starbucks breached the 2008 Settlement Agreement by selling French press coffeemakers sourced from other suppliers. *Id*. The 2019 Lawsuit was settled in 2021 before the claims related to the 2008 Settlement Agreement were litigated. *See* Stipulation and Order of Dismissal with Prejudice, Case No. 1:19-cv-04280 (S.D.N.Y. *filed* Nov. 22, 2021) (ER Dkt. No. 157), a copy of which is attached to the Vander Stoep Decl. as Exhibit 19.

*2022 Meetings Between Starbucks and Bodum Preceding the Instant Lawsuit*

68. Mr. Schultz testified that after he returned to Starbucks in 2022 to serve as interim ceo, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Exhibit 8 (Dep. of H. Schultz) at 24:8–11. However, Mr. Schultz was clear that he did not instruct Ms. Bengston to make Bodum the exclusive supplier of French presses for Starbucks (*id*. at 24:12–15), and "[t]here was no exclusivity" between Starbucks and Bodum. *Id*. at 33:5–15.

69. Mr. Bodum ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Bodum Decl. at ¶ 10; Exhibit 9 (Dep. of J. Bodum) at 238:24–239:11. Moreover, Mr. Bodum ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id*. at 239:9–11; 240:8–13.

70. Mr. Bodum's son, Peter Bodum, who was also present for these 2022 meetings, confirmed that Mr. Schultz never made such representations, as referred to in the previous paragraph. Deposition of Peter Bodum ("Dep. of P. Bodum") at 83:4–84:8, excerpts of which are

attached to the Vander Stoep Decl. as Exhibit 20.

## **The Current Dispute**

71. In March 2022, Starbucks began selling an off-the-shelf French press coffeemaker developed by the supplier Espro, the "Espro Press." Declaration of Gretchen Kulesza ("Decl. of G. Kulesza") at ¶¶ 2–3, attached to the Vander Stoep Decl. as Exhibit 21; Dkt. No. 9-1 (Image of Espro Press attached to Compl.).

72. Plaintiffs filed the instant lawsuit after Starbucks began selling the Espro Press and after their meetings with Starbucks in 2022, alleging that the 2008 Settlement Agreement created a right of first refusal for Starbucks French press product offerings, made Bodum the exclusive supplier of French presses to Starbucks, and that Starbucks sale of the Espro Press violates the 2008 Settlement Agreement. Compl. at ¶¶ 19–20.

*The Espro Press*

73. The Espro Press at issue in this litigation is an off-the-shelf product created independently by Espro without any custom design or input from Starbucks. Exhibit 21 (Decl. of G. Kulesza) at ¶ 3; *see also* Exhibit 3 (Dep. of T. Perez) at 142:24–143:10 (confirming the Espro Press was designed by Espro, with no involvement from Starbucks, that it is an off-the-shelf Espro product).

74. Mr. Bodum ███████████████████████████████████████████████████████████████████████████████████████. Exhibit 9 (Dep. of J. Bodum) at 116:22–117:15; Dkt. No. 9-1 (Image of Espro Press attached to Compl.).

75. ███████████ Bodum USA, Inc.'s former President and CEO Mr. Perez testified that the Espro Press does not embody Bodum's Chambord design and is not a copy of the Chambord French press or any other Bodum French press. Exhibit 3 (Dep. of T. Perez) at 142:3–

143:10 (the Espro Press was designed by Espro, with no involvement from Starbucks, that it is an off-the-shelf Espro product, that also does not embody Bodum's Chambord design, and that Bodum has never asserted any claims against Espro with respect to this press); *id.* at 163:15–165:5 (confirming that the Espro Press is not an embodiment of a Bodum product design, not a copy of the Chambord French Press, and not a copy of any other Bodum French press); Exhibit 9 (Dep. of J. Bodum) at 117:2–24 ███████████████████████████████████████

████████████████████████████████████████████████████████████

███ .

    76.    Mr. Bennett ████████████████████████████████████

████████████████████████████████████████████████████████████

████ Exhibit 4 (Dep. of D. Bennett) at 97:18–24.

DATED: May 9, 2025                            Respectfully submitted,

                                                      */s/ Kari L. Vander Stoep*

**K&L Gates LLP**

Nicole C. Mueller
ARDC No. 639735
K&L GATES LLP
70 West Madison Street
Suite 3300
Chicago, Illinois 60602
Phone: 312.807.4448
Nicole.Mueller@klgates.com

Pallavi Mehta Wahi (*pro hac vice*)
Kari L. Vander Stoep (*pro hac vice*)
Ashley E.M. Gammell (*pro hac vice*)
K&L GATES LLP
925 Fourth Avenue
Suite 2900
Seattle, Washington 98104

        Phone: 206.623.7580
        Pallavi.Wahi@klgates.com
        Kari.Vanderstoep@klgates.com
        Ashley.Gammell@klgates.com

*Counsel for Defendant Starbucks Corporation*

**CERTIFICATE OF SERVICE**

       The undersigned certifies that on May 9, 2025, a true and correct copy of the foregoing and its supporting declarations was served upon the following respondents, by sending a copy to the email addresses below:

Ashley Pendleton (6328690)
James E. Griffith (6269854)
Ziliak Law LLC
141 W. Jackson Blvd., Ste 4048
Chicago, IL 60604
Tel: 312.462.3350
apendleton@ziliak.com
jgriffith@ziliak.com
docket@ziliak.com


Nicole Wing
BODUM USA, Inc.
General Counsel
 45 E. 20th Street
8th Floor
New York, NY 10003
Tel: 212.367.8844
nicole.wing@bodum.com


                                                     */s/ Nicole Mueller*
                                                   Attorney for Defendant